UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA, | No. 2:19-cr-00234-KJM |
| Plaintiff, | |
| v. | ORDER |
| DANIEL ANDREW WALKER, | |
| Defendant. | |

On December 19, 2019, a federal grand jury returned an indictment charging defendant Daniel Andrew Walker with one count of being a felon in possession of a firearm in violation of 18 U.S.C. § 922(g)(1). Indictment, ECF No. 10. On January 9, 2020, defendant moved to suppress evidence of firearms discovered as a result of, he contends, a search warrant obtained without probable cause. Mot., ECF No. 22. The government opposes the motion, Opp'n, ECF No. 27, and defendant has filed a reply, Reply, ECF No. 32. On March 9, 2020, the court heard oral argument on the motion. Douglas Beevers appeared on behalf of defendant; James Conolly appeared on behalf of the government. After hearing argument, the court took the matter under submission for resolution by written order.

For the reasons stated below, defendant's motion is DENIED.

1    I.    LEGAL STANDARDP

2            "[O]ne whose Fourth Amendment rights are violated may successfully suppress

3    evidence obtained in the course of an illegal search and seizure." *Rakas v. Illinois*, 439 U.S. 128,

4    138 (1978).  The Fourth Amendment requires that the underlying search warrant be based on

5    "probable cause, supported by Oath or affirmation[.]"  U.S. Const. amend. IV.  Specifically, the

6    law enforcement official seeking the warrant must have established probable cause to believe the

7    evidence sought would assist in finding or convicting a particular defendant for a particular

8    offense. *Bill v. Brewer*, 799 F.3d 1295, 1300 (9th Cir. 2015) (citing *Dalia v. United States*, 441

9    U.S. 238, 255 (1979)).

10            This probable cause analysis is "practical" and "nontechnical," and it routinely

11    requires judges to draw "reasonable inferences." *Illinois v. Gates*, 462 U.S. 213, 231, 240 (1983)

12    (citation and quotations omitted).  The issuing judge need only find under "'the circumstances set

13    forth in the affidavit before him . . . a fair probability that contraband or evidence of a crime will

14    be found in a particular place.'" *United States v. Underwood*, 725 F.3d 1076, 1081 (9th Cir.

15    2013) (quoting *Gates*, 462 U.S. at 238); *see also Warden, Md. Penitentiary v. Hayden*, 387 U.S.

16    294, 307 (1967) (requiring only "cause to believe" the evidence sought "will aid in a particular

17    apprehension or conviction").  Given this lenience, the issuing judge's probable cause

18    determination "should be paid great deference." *Gates*, 462 U.S. at 236 (citations and quotations

19    omitted); *see also United States v. Crews*, 502 F.3d 1130, 1135 (9th Cir. 2007).  Even in

20    "'borderline cases, preference will be accorded to warrants and to the decision of the magistrate

21    [judge] issuing it.'" *Crews*, 502 F.3d at 1135 (quoting *United States v. Terry*, 911 F.2d 272, 275

22    (9th Cir. 1990)).  The burden is on defendant to show the challenged search violated his Fourth

23    Amendment rights. *Rakas*, 439 U.S. at 132 n.1 (citations omitted).

24    II.    DISCUSSION

25            Defendant moves to suppress evidence discovered in a March 19, 2019 search

26    based on a warrant issued by a Siskiyou County judge, warrant number 2019-77,[1] and any

27    _____

28            [1] The warrant issued and executed on March 19, 2019, is the operative warrant at issue
    here.  Although there was a prior iteration of the March 19, 2019 warrant containing an inaccurate

1    additional warrant related to that search.  Mot. at 1.  He argues the supporting affidavit lacks

2    probable cause because Facebook photos contained therein, depicting defendant using firearms,

3    lack foundation to establish the incriminating conduct occurred in California.  *Id.* at 2.  If the

4    conduct occurred outside the state, defendant contends, "California judges have no jurisdiction to

5    issue [] search warrant[s] for evidence of a crime committed in another state."

6           In its opposition, the government argues the statements of the Supervising

7    Investigator for the Siskiyou County District Attorney's Office, Yves Pike, contained in the

8    supporting affidavit establish probable cause.  Based on Pike's training and experience, the social

9    media images on which Pike's statements rely suggest the pertinent conduct occurred in

10   California.  Opp'n at 5.  These images include photographs and video clips of defendant and his

11   wife shooting guns near Castle Lake, near Mount Shasta, California, a photograph of a pink AR-

12   style rifle resting on an unidentified individual's lap, most likely that of defendant, in defendant's

13   living room, and a photograph of defendant with a scope assault rifle "in what appeared to be his

14   own workshop."  *Id.*  These photographs and video, viewed together with additional photographs

15   and video of defendant's holding and firing weapons in Oklahoma, established a "pattern and

16   practice of possessing and using firearms sufficiently to meet the probable cause standard."  *Id.* at

17   5–6.

18          The court finds that when examining the totality of the circumstances, including

19   the photographic and video evidence supporting the warrant affidavit, Pike's statements based on

20   his training and experience, sufficient probable cause existed to justify issuance of the March 19,

21   2019 warrant.

22          A reviewing "magistrate judge is only required to answer the 'commonsense,

23   practical question whether there is probable cause to believe that contraband or evidence is

24   located in a particular place' before issuing a search warrant."  *United States v. Gourde*, 440 F.3d

25   1065, 1069 (9th Cir. 2006) (some internal quotations omitted) (quoting *Gates*, 462 U.S. at 230).

26   ───────────────────

27   property address, that warrant was amended to reflect the correct address, and defendant has
     abandoned any argument based on an inaccurate description of the property.  *See* Mot. at 1; Reply
28   at 1.  Additionally, defendant's opening brief erroneously identifies the search warrant as warrant
     number 2019-82.  *See* Mot. at 1.  The correct warrant number is 2019-77.  *See* Ex. 1 at 1.

1   In doing so, the judge must consider the "totality of the circumstances." *Id.* (quoting *Gates*, 462

2   U.S. at 246).  Probable cause requires nothing more than a "'fair probability,' not certainty or

3   even a preponderance of the evidence."  *Id.* (quoting *Gates*, 462 U.S. at 246).  If it is apparent the

4   issuing magistrate's decision was not "arbitrarily exercised," *United States v. Leake*, 998 F.2d

5   1359, 1363 (6th Cir. 1993), the court must afford that decision "great deference," *Gourde*, 440

6   F.3d at 1069.

7           Here, photographic evidence found on defendant's Facebook account reveals a

8   profile picture depicting a pink AR-15 rifle resting on an unidentified individual's lap.  Opp'n,

9   Ex. 1 at 6, 11.[2]  The caption on the photo contains a link to the Facebook page of Jennifer Walker,

10  defendant's wife, on which "numerous photographs of Jennifer and Daniel Walker" were found.

11  Opp'n at 2, Ex. 1 at 11.  Pike compared the photo showing the pink AR-15 to other photos

12  located on Jennifer Walker's page and, based on similarities between and among the photos,

13  concluded the photos had been taken inside defendant's home.  *Id.* at 3, Ex. 1 at 11.  Pike also

14  determined the location of the photos based on the GPS notification on Jennifer Walker's camera

15  phone, which listed in her Facebook posts the photo locations as "near Mount Shasta."  *Id.* (citing

16  Ex. 1 at 11).  Defendant's own Facebook page displays a photo depicting a male holding a SKS-

17  style assault rifle and showing someone, who Pike believes is defendant based on the individual's

18  hand color and apparent age, reaching from slightly off frame to retrieve what appears to be an

19  ammunition magazine from the male holding the rifle.  Ex. 1 at 10.

20          Jennifer Walker's Facebook profile also displays a photo showing defendant

21  appearing to work on a "scoped assault rifle."  *Id.* (citing Ex. 1 at 12).  The photo displays a link

22  to defendant's Facebook profile and a caption reading, "It is so nice to have you back."  *Id.* (citing

23  Ex. 1 at 12).  Defendant's Facebook profile also contains a video depicting Jennifer Walker

24  "firing a silver-colored revolver" as she stands near the bank of a lake, which appears "consistent

25  with Castle Lake, in the Mount Shasta Area."  Ex. 1 at 10–11.  Defendant appears in the video

26          [2] As indicated in the government's opposition, the contents of exhibit 1 have been
27  redacted and lodged with the court for protection of personal identifying information (PII).  *See*
    Opp'n at 7.  The court, therefore, cites to the exhibit's internal pagination, which reflects page
28  numbers that are consistent across the two affidavits.

and speaks to Mrs. Walker while the camera is running.  *Id.*  There are also photos and videos of defendant and Mrs. Walker handling and firing several different firearms during a trip to Crescent, Oklahoma.  *Id.* at 12.

Additionally, defendant's Facebook page contains pictures and advertisements related to the Hell's Angels outlaw motorcycle gang and photos of defendant wearing Hell's Angel's paraphernalia displaying slogans common to the organization.  *Id.* at 9–10.  Pike states he is aware that the Hell's Angels Motorcycle Club is classified as a criminal organization by the Federal Department of Justice and a group known for trafficking in violence and weapons and narcotics possession and distribution.  *Id.* at 10.

In light of all of the information reviewed in his declaration, Pike concludes, "Based on [his] training and experience," he knows that "individuals who possess multiple firearms and who make social media posts about gun ownership," and handling and firing firearms, "tend to maintain possession of those firearms."  *Id.* at 13.  Pike further states that the information tends to show the "firearms existed and may have once been located in a place to which the suspect had access, and . . . tend to connect the suspect with the weapons sought."  *Id.*

Reviewing all of this evidence under the totality of the circumstances rubric, there is no indication the state judge's decision to issue the March 19, 2019 warrant was "arbitrarily exercised" or that the evidence fails to show a "fair probability" that criminal contraband would be found in the target location.  *See Leake*, 998 F.2d at 1363; *Gourde*, 440 F.3d at 1069.

Defendant argues the supporting evidence fails to establish a sufficient nexus between the illegal activity and the location to be searched.  Reply at 1–2.  For example, defendant asserts the photo depicting him touching a firearm on a repair table, Ex. 1 at 3, 12, does not establish his possession of the firearm; nor does it support a conclusion the alleged possession occurred in California because the photo does not indicate on whose repair table the gun is resting or where it was taken.  *Id.* at 2.  Defendant also argues the photographic evidence must be disregarded as stale due to passage of time and suggests without evidentiary support that all the photos were taken in defendant's prior residence; defendants also argues any of Pike's statements linking the alleged conduct to California are conclusory.  *Id.* at 2–3.

1    Defendants' contentions lack merit.  First, the affidavit here is "not so lacking in

2    indicia of probable cause as to render reliance upon it objectively unreasonable."  *Crews*, 502

3    F.3d at 1136.  The required nexus between the alleged criminal behavior and the location to be

4    searched does not set a high bar: it need only satisfy a reasonableness standard, supporting the

5    conclusion that it is "reasonable to seek the evidence at the location indicated in the affidavit."

6    *Id.* (citing *United States v. Chavez–Miranda*, 306 F.3d 973, 978 (9th Cir. 2002)).  As explained

7    above, Pike examined video and photographic evidence located on the Facebook pages of both

8    defendant and his wife, whose residence is in Mount Shasta, California.  He then compared the

9    evidence to detect similarities and identification points, including GPS location information;

10   based on his training and experience, Pike ultimately averred to a high degree of certainty that

11   evidence of defendant's firearm possession would be found at the residence listed in the affidavit.

12   As the government noted at hearing, defendant makes no contention that he or Mrs. Walker

13   lacked exclusive control over their respective Facebook accounts or were not responsible or

14   aware of the content posted on their accounts during the relevant time period.  Thus, based on this

15   evidence alone the state judge easily could conclude defendant engaged in activities involving the

16   use of firearms in Siskiyou County, California.

17   Second, the passage of time here does not render the photographic evidence stale

18   and unreliable.  "'[T]he mere lapse of substantial amounts of time is not controlling in a question

19   of staleness.'"  *United States v. Collins*, 61 F.3d 1379, 1384 (9th Cir. 1995) (alteration omitted)

20   (quoting *United States v. Pitts*, 6 F.3d 1366, 1369 (9th Cir. 1993)).  And the lapse in time here is

21   within reason given Ninth Circuit authority.  The Circuit has observed "information as old as

22   twenty-two months was not stale when considered in light of other more recent information in the

23   affidavit."  *Collins*, 61 F.3d at 1384 (summarizing *United States v. Vaandering*, 50 F.3d 696, 700

24   (9th Cir. 1995)).  Here, there are photos and videos dating back to 2017, *see* Ex. 1 at 12, and there

25   is also more recent evidence from late 2018 providing support, *id.* at 10 (August 2018 video of

26   Jennifer Walker firing revolver at Castle Lake in Mount Shasta area), 11 (October 28, 2018 photo

27   of pink and black AR-15 style rifle), 10 (October 29, 2018 photo of friend holding SKS-style

28   assault rifle), 9 (in November 2018, defendant's Facebook profile included Hell's Angels related

6

1    material).  Evidence of firearm possession in the fall of 2018, including in a location reasonably

2    identified as in California and near defendant's residence, is not stale when offered in support of

3    an affidavit seeking issuance of a warrant in the spring of 2019.  *See United States v. Batchelder*,

4    824 F.2d 563, 564 (7th Cir. 1987) (finding probable cause existed based, in part, on nine-month-

5    old information that defendant purchased illegal silencer parts for pistol).

6           Third, Pike's statements in his affidavit are not conclusory.  In *Gates*, the court

7    explained that conclusory statements are the type "that give the magistrate virtually no basis at all

8    for making a judgment regarding probable cause."  462 U.S. at 239 (citing examples of vague

9    statements such as, "an affiant . . . has cause to suspect and does believe," and "affiants have

10   received reliable information from a credible person and believe" (internal quotations and

11   citations omitted)).  Pike's affidavit is not comprised of a series of vague averments.  Rather, he

12   provides a series of concrete details, backed by photographs, videos and Facebook postings, that,

13   taken together, present sufficient detail to have allowed the issuing state judge to reasonably

14   conclude probable cause existed.

15          Finally, because the court finds probable cause exists, it need not reach

16   defendant's argument made at hearing that the good-faith exception is inapplicable where a

17   search warrant is based on a wholly conclusory affidavit.  *See United States v. Danhauer*, 229

18   F.3d 1002, 1007 (10th Cir. 2000) ("[T]he good-faith exception does not apply when the affidavit

19   in support of the warrant is 'so lacking in indicia of probable cause as to render official belief in

20   its existence entirely unreasonable.'" (quoting *United States v. Leon*, 468 U.S. 897, 923 (1984)).

21   Moreover, it is the government's burden to invoke the exception, and it has not done so here.  *See*

22   *United States v. SDI Future Health, Inc.*, 568 F.3d 684, 706 (9th Cir. 2009) ("When it invokes the

23   exception, the government bears the burden of proving that officers relied on the search warrant

24   'in an objectively reasonable manner.'" (citation omitted)).

25          In sum, the court finds the affidavit supporting the March 19, 2019 warrant

26   application contained sufficient detail to establish probable cause and support issuance of the

27   warrant itself.

28

1  III.     <u>CONCLUSION</u>

2              For the reasons articulated above, defendant's motion to suppress, ECF No. 22, is

3  DENIED.

4              IT IS SO ORDERED.

5  DATED:  July 7, 2020.

6

7                                               CHIEF UNITED STATES DISTRICT JUDGE

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28